# Bassett v. Allison.

# Bassett v. Deposit & Savings Bank.

(Decided April 30, 1914.)

## Consolidated Appeals from the Warren Circuit Court

1. Fraud—Action—Evidence.—Evidence examined in an action against a bank president for fraud in the sale of shares of the capital stock of said bank, and held sufficient to show that said shares were worthless at the time of the sale thereof.

2. Banks—Officers and Agents—Rights and Liabilities.—Where the president of a bank made a pretended sale of some of his own shares of the capital stock of the bank, taking the notes of the pretended purchasers therefor, and discounted said notes with the bank, and obtained the money thereon, the bank may recover from him the amount so obtained, such transaction being a fraud upon the bank.

M. M. LOGAN, ORA E. HAZELIP, HAZELRIGG & HAZELRIGG and WRIGHT & McELROY for appellant.

T. W. & R. C. P. THOMAS and GALLOWAY & MILLIKEN for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

The facts in each of these two cases being closely connected, the cases were consolidated in the lower court, and the evidence was taken as a whole. They have been consolidated and heard together in this court, and will be considered in one opinion.

On February 13, 1909, appellant, Bassett, sold to appellee, Allison, fifty shares of the capital stock of the Deposit & Savings Bank of Bowling Green, for the price of five thousand dollars, the par value of the shares.

He received in payment therefor, four notes, each in the sum of twelve hundred and fifty dollars, and due in six, twelve, eighteen and twenty-four months, respectively. The note due in six and the note due in twenty-four months were paid about the time the first note matured. The note due in twelve months was transferred by Bassett to the Bank of Woodburn; and that due in eighteen months was assigned by Bassett to the Grayson County National Bank.

The said banks sued Allison and Bassett upon said notes when same were not paid at maturity, and recov-

ered judgment against Allison thereon. In that action, Allison filed a cross-petition against Bassett, alleging that the notes sued upon, as well as the two notes theretofore paid by him to Bassett were obtained by false and fraudulent representations in the sale of the fifty shares of the capital stock of the Deposit & Savings Bank, and upon his cross-petition Allison recovered a judgment against Bassett in the sum of five thousand dollars. Bassett appeals.

The record in the case is voluminous. Within the limits of this opinion it will be possible only to touch upon the salient facts.

· The Deposit & Savings Bank was a comparatively small institution. On December 31, 1908, according to the report made by it to the Secretary of State, its loans and discounts amounted to $39,363.27; its furniture and fixtures were valued at $3,441.00; its real estate at $1,365.24; and it had in cash on hand and due from other banks, $9,144.94. Its deposits amounted to $38,044.70; and its capital stock was $15,000.00. The bank had no surplus.

Bassett, its president, had been in active charge of the bank for several years. He was an experienced banker, being at the same time president of the Grayson County National Bank at Leitchfield, and a director in the Bank of Woodburn, the two banks to which he had assigned the notes sued upon in this action; and he was also connected with other banks.

· As examples of his banking methods, the following instances disclosed upon an examination of the books of the Deposit & Savings Bank by an expert are given.

It was shown that in the individual deposit account of Bassett upon the books of the bank, an error of $1,000.00 in his favor was made in bringing down his balance; that the balance was originally $2,071.32, and that this was changed to $3,071.32, and that this change was made in his own handwriting. This was done on October 11, 1906; on October 13, 1906, the books show that a check was drawn by Bassett and paid by the bank, in the sum of three thousand dollars.

It was also shown that Bassett gave to the Grayson County National Bank a check for $500.00, drawn upon the Deposit & Savings Bank, and that this check was charged to Bassett's individual account as $5.00; also that a check drawn by Bassett for $250.00 was charged to his account as $2.50. These and many other intri-

cacies and irregularities in the individual account of Bassett with the bank were the subject of an action by the bank against him to recover an amount due by him to the bank, which is not here involved.

Another example of his banking methods is shown in the case of Bassett v. Deposit & Savings Bank, in the latter part of this opinion.

It was also shown that at one time, Bassett borrowed a cashier's check from the Bank of Woodburn, and deposited same to his credit in the Deposit & Savings Bank in order to increase the amount of cash on hand for the purpose of making a report or statement of the contion of the bank; that he gave in exchange to said Bank of Woodburn a cashier's check of the Deposit & Savings Bank, but that this was not taken into account; and afterwards both of the checks were destroyed.

Allison, to whom Bassett sold the fifty shares of the capital stock of the Deposit & Savings Bank, had had no banking experience. At the time of said transaction, Bassett represented to Allison that the condition of the bank was practically the same as on December 31, 1908, when the above-mentioned statement was made; that there was no "bad" paper in the bank, and only $200.00 or $300.00 of slow paper. Yet, it was shown that at this time the report was padded with a $3,200.00 note given by Bassett to the bank and credited to his account, which was charged back to him after that report was made.

Allison, upon his purchase of the shares became president of the bank, and took charge of its affairs. There were no losses incurred from loans made after Allison took charge; the expenses were greatly reduced; and every effort was apparently made to effect the rehabilitation of the bank; but despite such efforts, within a year it was found that liquidation was inevitable, and that it was necessary in order to conserve the interests of all concerned, to transfer the deposit accounts to the Warren State Bank, securing said bank by a transfer of such cash as there was on hand, and by a transfer of the loans and discounts in so far as they were acceptable to the Warren State Bank, and guaranteeing the latter bank against loss by the individual undertaking of the shareholders of the Deposit & Savings Bank, whereupon the latter ceased to do business.

In the process of liquidation, it developed that the real estate carried on the books of the bank as of the value of $1,365.24 was in fact worth only about $750.00;

that the furniture and fixtures carried on the books of the bank as of the value of $3,441.00 was in fact worth $2,000.00; that the loans and discount carried on the books of the bank as of the value of $39,363.27 were in fact not worth to exceed $30,000.00; while the deposits shown on the statement as $38,044.70 were in fact $4,000.00 in excess of that amount. There were also items of loss and depreciation, but those mentioned are sufficient to annihilate the capital stock of the bank. In short, despite a prudent and conservative management of the affairs of the bank until liquidation became inevitable, and despite a prudent and conservative liquidation, the shareholders have lost practically every dollar which they had invested in the shares of said bank. The sworn testimony of those in charge of the liquidation as to the necessity for such action is absolutely uncontradicted, and their good faith in that transaction is not open to any serious criticism. There was ample proof in the record that at the time of the sale of the shares by Bassett to Allison, the shares of the bank were worthless. The chancellor so found and held, and in that holding this court concurs.

Relative to the case of Bassett v. Deposit & Savings Bank, it appears that before Bassett sold the aforesaid shares to Allison, he was the owner of eighty-six out of one hundred and fifty shares of the capital stock of said bank; and on December 1, 1908, he made a pretended sale to each of four persons, of five shares of said stock, taking their notes therefor in the sum of five hundred dollars each, payable to the bank, which notes he placed with the notes of said bank, with the shares attached as collateral, taking credit upon his individual account for the proceeds of said notes.

It developed that these sales of shares were not bona fide, and that they were made with the understanding and agreement with the makers of said notes, that the same should not be enforced or attempted to be collected from them. The Bank sued Bassett to recover the two thousand dollars which he obtained from it by this transaction and converted to his own use out of the funds of the bank.

Upon a trial of the action, the court held that Bassett wrongfully took credit for the proceeds of said notes, and gave the bank judgment against him for the amount so obtained, and Bassett appeals from that judgment.

The four parties to whom the shares were transferred, and whose notes were taken with the shares as collateral, were unanimous in testifying that the transaction was had at the solicitation of Bassett and for the sole purpose of obtaining the use of their names as directors, and upon the understanding that the collection of said notes would not be enforced; and it appears from the proof that the makers thereof were not able to pay said notes and that Bassett knew of such financial condition.

The cashier of the bank thus naively tells the story of this remarkable banking transaction: "There was something said about making a report, and I says, 'We have got to have somebody sign this report;' and he (Bassett) says, 'All right, I will get some directors;' and I didn't know anything about what he was going to do, and he brought these notes back, and attached the stock and said, 'Now, we have directors.'" Of the four, one frankly told Bassett he was insolvent, two have since failed, and the other appears to be of doubtful solvency.

The shares attached as collateral to these notes were Bassett's own shares; but the notes were made payable to the Deposit & Savings Bank, this being done evidently in order that Bassett would not be compelled to endorse them himself in order to discount them to the bank.

Nevertheless, the notes were Bassett's notes in point of fact, and having fraudulently obtained their value from the bank, the bank was entitled to recover from him reimbursement for the amount he so obtained. The chancellor so held.

Being of the opinion that the conclusions reached by the chancellor in each of the consolidated cases are supported by the facts, the judgment in each of said cases is affirmed.